MARY E. SHORT, Respondent, v. WILLIAM J. BUTLER, Receiver, etc., Appellants.

Kansas City Court of Appeals, March 1, 1909.

**BANKS AND BANKING: Deposit: Agency.**   Plaintiff deposited her money with the defendant bank.   After some time she wanted interest on it and the cashier agreed to secure interest for her.   He and the president had her money together with other deposits transferred to a loan account in their names, and this money was loaned and interest paid thereon to the depositor.   In the meantime the bank was changed from a national to a State bank and later back to a national bank and finally went into the hands of a receiver.   *Held*:

(1) The president and cashier could not become the agents of the depositor without her knowledge and consent, of which there was no evidence.

(2) That the change in the character of the bank was not material though much of the interest was earned during that period.

(3) That during the whole transaction the depositor was the creditor and the bank the debtor in possession of the depositor's money.

Appeal from Barton Circuit Court.—*Hon. Berry G. Thurman,* Judge.

AFFIRMED.

*John A. Eaton* and *E. H. McVey* for appellant.

(1)   Plaintiff gave authority to J. C. Clark to loan her money and the money was loaned through Tygard & Clark, agents.   The plaintiff for many years, and through a long continued course of business, acquiesced in the loaning of her money.   She wrote letters about it, and received letters, and interest was paid to her on the loan.   She at all times knew that her money did not remain in the bank.   She knew she was not dealing with the bank, as a depositor nor in any other capacity, and she knew, that her money had been withdrawn from the bank, and was being loaned.   Under these circumstances, there is no evidence supporting the petition.   (2)   The account of "Tygard & Clark, Agents" represented a business carried on by them apart from the bank wherein they loaned the money of various parties.   In the loaning of this money, they acted as agent for these several persons.   (3)   The plaintiff sues to recover $1,144.60, balance claimed to be due her as a depositor in the Bates National Bank at the time of the failure.   The defense is that the money was withdrawn by her order and loaned for her benefit through a long series of years.   (4)   The powers of a national bank are limited to the powers granted by the Act of Congress.   Such banks have no other powers other than those expressly granted, and such as are necessary for the purpose of carrying into effect the powers expressly granted.   A national bank has no authority to act as a broker in the loaning of money for others.   Grow v. Cockrill, 63 Ark. 418, 39 S. W. 60; Bank v. Bank, 173 Mo. 158; Bank v. Townsend, 139 U. S. 67; Bank v. Kennedy, 167 U. S. 362; McCrary v. Chambers, 48 Ill. 445; Weckler v. Bank, 42 Md. 581; 20 Am. Rep. 95; Lazear v. Bank, 52 Md. 78, Am. Rep. 355.

*Silas W. Dooley* for respondent.

(1)   The Bates National Bank, defendant herein, assumed all the liabilities of its predecessor the Bates County Bank which was a State bank.   (2)   The debt here was one created by the Bates County Bank and it was assumed by defendant.   Coffey v. Bank, 46 Mo. 140; Bank v. Claggett, 141 U. S. 520; Eans v. Bank, 79 Mo. 182.   The plea of *ultra vires* cannot be interposed by the defendant under the facts in this case, the transaction was between plaintiff and a State bank.   (3) Plaintiff in all her transactions connected with the matter involved in this suit, dealt solely with the banks. The defendant and its predecessors by their long and continuous course of dealing with plaintiff as shown in its deposit slip and letters and the admission, therein contained, are estopped from denying the liability of the bank.

BROADDUS, P. J.—This is a suit by plaintiff to recover the sum of $1,144.60, alleged to be due her by the Bates National Bank.   Before the institution of the suit, the bank became insolvent and was placed in the hands of a receiver, who is made a party defendant.

In the year 1891, plaintiff deposited in the Bates National Bank $280 and continued to make deposits with the bank until October, 1894, when her accumulated deposits amounted to the sum of $428, at which time she stated to Mr. Clark, the bank's cashier, that she would like for her money to earn something.   The cashier told her that he would lend her money on real estate security so as to make her eight per cent.   To this proposal, plaintiff assented.   At the time the arrangement was made, Tygard, the president, and Clark, the cashier of the bank, started a business represented by an account with the bank entitled Tygard & Clark, agents.   This was done for the purpose of lending the money of the depositors of the bank, who desired to receive more interest on their deposits than the bank

was willing to pay. The money of such depositors was transferred to the credit account of Tygard & Clark.

In October, 1894, the sum of $428 of plaintiff on deposit was transferred to the account of Tygard & Clark, agents, for the purpose of being lent, and from that time was continuously being lent by said agents. Plaintiff at times drew checks upon the bank for funds which were paid from the semiannual receipts of interest on her loans. She also made additional deposits. This course of business continued for twelve years. At the time of the bank's failure, all the money that had been deposited to the credit of Tygard & Clark had been lent and their account was found to be overdrawn.

During the course of years mentioned, plaintiff had written correspondence at various times with Clark in reference to her money. All the letters from him were signed, J. C. Clark, cashier, and were written upon the letterheads of the bank. The plaintiff had no knowledge of the manner in which the accounts of depositors, whose money was to be lent, were kept. She only knew that her money was lent and that for a time it was earning her eight and afterwards six per cent. When she did not draw her interest when paid, it was credited to her on the books of the bank and then transferred to the account of Tygard & Clark for the purpose of their lending it.

The following statement was, by agreement, admitted in evidence:

"It is admitted that the Bates County National Bank continued in business from 1881 until August, 1894; that at that time it was reorganized into the Bates County Bank, and continued as such as a State corporation until September 4, 1902, at which time it was reorganized under the laws of the United States into the Bates National Bank. That the Bates National Bank was declared insolvent by the comptroller of the currency, September 20, 1906, and that the defendant, Wm. J. Butler, was appointed receiver, and

is now the duly qualified and acting receiver of the bank."

At the time of the bank's failure, the books show that there was to the plaintiff's credit the sum of $1,111.30, for the purpose of being put out in loans, and to her individual credit a balance of $33.35. This statement is made from the report of the receiver, which was read in evidence. We infer from this statement that the former sum had been transferred to the account of Tygard & Clark and therefore could not be withdrawn on the drafts of plaintiff.

The plaintiff recovered in the sum of $1,144.65, and the defendants appealed.

If we understand defendants' contention, it is that the transfer of the amount to the credit of plaintiff on January 6, 1906, to the credit of Tygard & Clark, to be lent, operated to extinguish the bank's indebtedness to the plaintiff. This construction of the effect of the change of credit is based upon the assumption that Tygard & Clark were the agents of plaintiff; therefore, the funds being in the hands of her agents, she had no cause of action against the bank.

There is no evidence in the record that goes to show that Tygard & Clark were the plaintiff's agents, or that she had knowledge at any time that they were assuming to act for her in that capacity. The bank could not constitute Tygard & Clark plaintiff's agents without her consent or approval. Her dealings were with the bank alone.

Defendants try to evade liability on the ground that the bank could not act in the capacity of lending money on real estate security. It is true, that the bank while acting under the laws of the United States had no such authority. But it is also true, that at the time plaintiff made the arrangement with the bank to lend her money on such security, it was acting under the laws of this State and had such authority and such authority continued until the reorganization in 1902,

when it became for the second time a national bank. Such being the case, the greater part of the interest plaintiff claims was the result of an arrangement made with the bank, lawful in every particular.

The argument of defendants is not supported by either law or logic. The bank had the money in its possession and still has it for aught the record shows, but it seeks to evade liability on the ground that it has done an unlawful thing, viz., placed it to the credit of Tygard & Clark, agents, to be lent on real estate security. But to do defendants justice, we must assume that their argument is based upon the theory that Tygard & Clark were plaintiff's agents. If the legerdemain process resorted to did not constitute Tygard & Clark the agents of plaintiff and if the law prohibited the bank from making them her agents to lend money on real estate security, the transfer on the books to their credit of plaintiff's funds was nugatory.

After all, the case is reduced to the simple proposition of creditor and debtor. The money of plaintiff is in the hands of the bank and whether it was held by Tygard and Clark as president and cashier, or by Tygard & Clark, agents, can make no difference. There was no dispute as to the evidence. And, as plaintiff was entitled to an instruction directing a verdict in her favor, it is useless to discuss questions raised by defendants on the giving and refusing of instructions.

Affirmed. All concur.